# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMAL A. AKBAR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 17-cv-5447 |
| | ) |
| SAVOY SQUARES, | ) Honorable Edmond E. Chang |
| | ) |
| Defendant. | ) |

## MOTION TO VACATE DEFAULT JUDGMENT

Defendants Interstate Realty Management Company, a New Jersey corporation, incorrectly named herein as Savoy Squares ("Interstate"), and Legends A-2, LLC, an Illinois limited liability company, incorrectly named herein as Savoy Squares ("Legends")(Interstate and Legends are collectively referred to as the "Defendants"), by and through their counsel of record, for their motion to vacate a default judgment entered on October 10, 2018 in favor of Plaintiff Jamal A. Akbar ("Akbar") in this matter,[1] state as follows:

## INTRODUCTION

On October 17, 2018, Defendants learned for the very first time that this matter existed and had been filed by Akbar against an entity named "Savoy Squares." Upon immediate investigation, Defendants ascertained that on October 10, 2018, the court entered a $15,000 default judgment in favor of Akbar and against "Savoy Square Apartments" (the "Default Judgment"). Neither Savoy Squares nor Savoy Square Apartments are actual entities. Neither Savoy Squares nor Savoy Square Apartments are assumed names for any entity, including for either of Defendants. On October 19, 2018, a mere two days after they learned about the Default

---

[1] Both Defendants have filed this Motion because it is unclear which entity Akbar was attempting to name in the Complaint.

Judgment, Defendants retained counsel in this matter to investigate how the Default Judgment was entered and to attempt to vacate the Default Judgment. Counsel immediately began its review of this matter and its investigation into the circumstances giving rise to the entry of the Default Judgment.

The timely investigation revealed that "Savoy Square Apartments" was served with the amended complaint (the "Complaint") on June 13, 2018 through Dominique Beck ("Beck"). At the time of service, Beck was a temporary receptionist/secretary employed by Interstate. Beck did not tender the Complaint to Bianca Walker ("Walker"), the regional supervisor for Defendants, as she should have done at this time, nor did Beck tell her that she was served with the Complaint. Beck's temporary employment at Interstate ended in August 2018 without Beck ever communicating to Walker that she had received the Complaint or any documents related to this lawsuit. In turn, Walker did not inform Defendants about this matter because she did not know about the lawsuit. Defendants have now reviewed the Complaint and, as demonstrated below, Defendants clearly have meritorious, dispositive defenses to the allegations in the Complaint. Defendants have also filed this Motion a mere nine (9) days after learning of the entry of the Default Judgment and counsel has filed this Motion a week after being retained.

For the foregoing reasons and as fully set forth in this Motion, Defendants have established that the Default Judgment should be vacated pursuant to Rule 60(b)(1).

## BACKGROUND

Defendants provide the following background section in order to demonstrate Defendants' timely and meritorious defense of the parallel complaint filed by Akbar with the Chicago Commission on Human Relations. As set forth in this Motion, it certainly would not make any sense for Defendants to doggedly defend and ultimately prevail against Akbar's

administrative complaint (that they knew about) only to then willfully ignore Akbar's Federal Complaint (that they did not know about).

### A. Interstate Rejects Akbar's Application for Low-Income Housing

On February 17, 2016, Akbar applied for a one-bedroom, low-income apartment at the Savoy Square—Legends South Apartments located at 4448 South State Street, Chicago, Illinois (the "Savoy Square"). Akbar's application (the "Application") is attached as Exhibit 1.

At all relevant times, Interstate has managed Savoy Square for Legends, including the processing of applications for low-income housing at Savoy Square. Akbar applied for the apartment through the Low Income Housing Tax Credit Program. Pursuant to the Admissions and Continued Occupancy Policy governing the Low Income Housing Tax Credit Program, Akbar was not eligible for the apartment unless he could show that either: (1) he had $25,776-$31,920 in yearly income (three times the annual rent); or (2) he received public housing assistance or vouchers to supplement his income (the "Minimum Income Requirement").

Akbar indicated that his monthly income was $731 ($8,772/year), which he received from disability payments. Akbar did not indicate that he received any public housing rental assistance such as through the Chicago Housing Authority (CHA) Housing Choice Voucher program. Consequently, Akbar's application was rejected on March 23, 2016 because he could not meet the Minimum Income Requirement of the Admissions and Continued Occupancy Policy. To be clear: according to the Application, the rent for the unit Akbar applied for was $716 per month, which would have left Akbar with $15/month for his other living expenses after he paid rent from his $731/month income from his disability benefits.

Akbar appealed the rejection. After providing notice to Akbar, an appeal hearing was held on April 7, 2016. Akbar failed to attend the hearing; as a result, the rejection was upheld.

### B. Akbar Files a Complaint With the Chicago Commission on Human Relations

On May 27, 2016, Akbar filed a complaint alleging housing discrimination with the Chicago Commission on Human Relations ("CCHR"), Case No. 16-H-18 (the "CCHR Complaint"). A copy of the CCHR Complaint is attached as Exhibit 2. Akbar alleged in the CCHR Complaint that he was discriminated against based on his income and disability.

On July 15, 2016, Defendants' counsel, Grant Law, LLC ("Grant Law"), filed its appearance in the CCHR proceeding. On July 21, 2016, Grant Law filed Defendants' Verified Response to the CCHR Complaint and Position Statement and Supporting Documents. Copies of Defendants' relevant responsive pleadings in the CCHR proceeding are attached as Exhibit 3.

On March 6, 2018 CCHR dismissed the CCHR Complaint for lack of evidence. Copies of the dismissal order and investigation summary are attached as Exhibits 4 and 5. CCHR found absolutely no evidence of discrimination based on disability or source of income as Defendants were able to identify more than 20 other residents at Savoy Square that received disability benefits. (Investigation Summary, p. 2). CCHR found that the Minimum Income Requirement in no way evidenced discrimination as Akbar did not meet the minimum threshold even after taking his disability benefits into account as income. *See* Robert Taylor Homes Phase A-1, Admissions and Continued Occupancy Policy, § 3.1 (attached to Respondent's Statement of Position to the CCHR Complaint as Exhibit C (the "ACOP")). Ultimately, as more fully explained in the decision, the death knell for Akbar's claim was CCHR's finding that:

> The Commission has long held that, as a business necessity, a property owner or manager has a right to ensure that a rental applicant can afford the rent and support himself in the apartment. The Commission has also consistently held that in most cases, it is reasonable for a property owner to require that a rental applicant's income be at least three times the monthly rent. The Commission makes no determination as to any allegations involving laws apart from CFHO.
>
> Accordingly, the Commission finds no substantial evidence of housing discrimination

4

based on sources of income or disability.

(Id., p. 5). On March 20, 2018, Akbar filed a request for review of the dismissal of his CCHR Complaint. The request for review is still pending at CCHR.

### C. **Akbar Files the Instant Matter and a Temporary Employee Accepts Service**

On July 24, 2017, Akbar filed his original *pro se* complaint in this matter against "Savoy Squares" and Roshawn Perry ("Perry"). (Docket No. 1). Perry was a former employee of Interstate. (Compl., ¶ 4). On December 27, 2017, the court dismissed the original complaint without prejudice. (Docket No. 10). On January 22, 2018, Akbar filed his amended Complaint, alleging housing discrimination against "Savoy Squares" and Perry. A copy of the Complaint is attached as Exhibit 6. On June 15, 2018, the US Marshal's Office returned executed summonses evidencing service of the Complaint. (Docket Nos. 19-21). On July 25, 2018, the US Marshal's Office filed amended returns of service to identify the party actually served. (Docket No. 22-23). The amended return of service evidences that Beck was served with a summons and Complaint on June 13, 2018 (presumably for "Savoy Square Apartments") and that Beck was the General Manager. (Docket No. 23). Perry was never served with the Complaint. (Docket Nos. 27, 30).

Contrary to the return of service, Beck was not the General Manager.[2] (Walker Decl., ¶ 7). The Declaration of Bianca Walker, Regional Manager for Defendants, is attached as Exhibit 7. Beck was not even a manager for either of the Defendants at all, or even a full-time employee. (Id., ¶ 8). Rather, Beck was a temporary receptionist/secretary employed by Interstate for the summer. (Id., ¶¶ 5-6). At no point in time did Beck ever inform Walker that she was served with the Complaint or that a lawsuit was pending. (Id., ¶¶ 10-11). As the supervisor for Defendants, Walker informed Beck that any important communications/correspondence should

---

[2] Defendants do not in any way suggest that the US Marshal serving the Complaint did anything improper in serving Beck if she did represent that she was the General Manager or that she was authorized to accept service. Defendants are not contesting service in this Motion as the return of service is *prima facie* evidence of service.

have been tendered to Walker; as a result, Walker should have been informed that the Complaint was served or that a lawsuit was pending. (Id., ¶ 9). If Beck would have made Walker aware of the Complaint or the lawsuit, then Walker would have immediately communicated with her supervisors for Defendants and/or with Grant Law (the firm handling the CCHR Complaint). (Id., ¶ 13). Because Walker was not apprised of the service of the Complaint or that a lawsuit had been filed (prior to October 17, 2018), she was not able to communicate to Defendants, and/or her supervisors, and/or with Grant Law about this matter. (Id., ¶ 14). Walker does not know why she was never apprised (prior to October 17, 2018) of the service of the Complaint or the existence of this lawsuit. (Id., ¶ 15).

According to the docket, on July 27, 2018, the court clerk mailed a copy of the court's July 26, 2018 minute order (Docket No. 24) to "Defendant Savoy Square Apartments, care of Dominque Beck, General Manager, at 4448 South State Street, Chicago, Illinois 60609." At no time was this correspondence tendered to Walker and Defendants have no record of the receipt of this correspondence. (Walker Decl., ¶¶ 16-17). Walker does not know why Defendants did not receive it, but she believes that Beck's temporary employment status may be the reason. (Id., ¶ 18). If Walker would have been made aware of this correspondence, then Walker would have immediately communicated with her supervisor and/or with Grant Law. (Id., ¶19).

On August 24, 2018, Beck's temporary assignment at Interstate ended. (Id., ¶ 20). According to the docket, on August 28, 2018, the court clerk mailed a copy of the court's August 24, 2018 minute order (Docket No. 26) to "Defendant Savoy Square Apartments, care of Dominque Beck, General Manager, at 4448 South State Street, Chicago, Illinois 60609." At no time was this correspondence tendered to Walker and Defendants have no record of the receipt of this correspondence. (Walker Decl., ¶¶ 21-22). Walker does not know why Defendants did

6

not receive the correspondence, but she believes that Beck's temporary employment status or the fact that Beck was no longer employed at Interstate may be the reason. (Id., ¶ 23). If Walker would have been made aware of this correspondence, then Walker would have immediately communicated with her supervisor and/or with Grant Law. (Id., ¶ 24).

According to the docket, on September 21, 2018, the court clerk mailed a copy of the court's September 14, 2018 minute order (Docket No. 26) to "Defendant Savoy Square Apartments, care of Dominque Beck, General Manager, at 4448 South State Street, Chicago, Illinois 60609." At no time was this correspondence tendered to Walker and Defendants have no record of the receipt of this correspondence. (Walker Decl., ¶¶ 25-26). Again, Walker does not know why Defendants did not receive the correspondence, but she believes Beck's temporary employment status or that Beck was no longer employed at Interstate may be the reason. (Id., ¶ 27). If Walker would have been made aware of this correspondence, then Walker would have immediately communicated with her supervisor and/or with Grant Law. (Id., ¶ 28).

According to the docket, the court entered the Default Judgment on October 10, 2018 for $15,000 in favor of Akbar and against "Savoy Square Apartments." (Docket No. 31).

**D.    Defendants Discover on October 17, 2018 That This Lawsuit Existed and That Default Judgment was Entered Against "Savoy Square Apartments"**

On October 17, 2018, Akbar delivered a "Letter of notification" to Defendants, informing Defendants that "Savoy Square Apartments" had been defaulted in the lawsuit and that Akbar was in the "process to prepare for a class action." (Walker Decl., ¶ 29). This was the first time that Walker or Defendants learned that this matter existed. (Id., ¶ 30). Walker does not know why Defendants got this letter and previous correspondence was not received. (Id., ¶ 31).

To be clear: October 17, 2018, is the very first time that either of the Defendants learned that this matter had even been filed or that the Default Judgment had been entered. (Walker

Decl., ¶¶ 12, 32).

## ARGUMENT

Rule 60(b)(1) permits a court to vacate a default judgment where the entry of the judgment was the product of mistake, inadvertence, surprise, or excusable neglect. Fed. R. Civ. Pro. 60(b)(1). It is well established that there is a well-articulated policy of favoring a trial on the merits over the "harsh sanction" of a default judgment. *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 630-31 (7th Cir. 2009); *C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1205 (7th Cir. 1984). Since trial on the merits is favored, "it is appropriate that Rule 60(b)(1) be liberally applied in the context of default judgments, especially where those judgments result from honest mistakes rather than willful misconduct, carelessness or negligence." *Fid. & Deposit Co. of Md. V. Jack Isom Constr. Co.*, Case No. 17-cv-21, 2018 U.S. Dist. LEXIS 65142, **6-7 (N.D. Ind. Apr. 17, 2018)(quoting *Ellingsworth v. Chrysler*, 665 F.2d 180, 185 (7th Cir. 1981)).

Indeed, a default judgment is viewed as a "weapon of last resort" to be used only against a party willfully ignoring litigation. *Sun v. Bd. of Trs.,* 473 F.3d 799, 811 (7th Cir. 2007). Equitable principals should guide a court's determination of whether to vacate a default judgment. *C.K.S. Eng'rs*, 726 F.2d at 1208. As a result, the "common thread running through all the decisions is that the ruling on a Rule 60(b) motion to vacate a default judgment should depend largely on the willfulness of the defaulting party's actions." *Id.*

To make the requisite showing, a movant seeking to vacate a default judgment must demonstrate: (1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint. *Coyote Logistics, LLC v. AMC Cargo, Inc.*, Case No. 16 C 6371, 2017 U.S. Dist. LEXIS 70495, **3-4 (N.D. Ill. May 9, 2017).

Defendants are able to satisfy each of the elements and the Default Judgment should be vacated. The court should also consider that no prejudice will befall Akbar if the Default Judgment is vacated. In contrast, as demonstrated in the portion of this Motion detailing Defendants' defenses, Defendants have complete, dispositive defenses to Akbar's claim. As a result, if the Default Judgment is not vacated, Defendants will be liable for a claim that, on the merits, is not well founded. Such a result is unjust.

**(1)** **<u>Defendants Establish Good Cause for the Default</u>**

Defendants are able to establish good cause for the Default Judgment because the entry of the Default Judgment was the product of Defendants' "excusable neglect" or "inadvertence" as defined by the relevant case law. Good cause can include excusable neglect, encompassing "both simple, faultless omissions to act and, more commonly, omission caused by carelessness." *Coyote Logistics,* 2017 U.S. Dist. LEXIS 70495, at **3-4. Courts have adopted a "flexible understanding" of what constitutes good cause/excusable neglect, taking into account all relevant circumstances surrounding the party's omission such as the reason for the default, whether it was within the movant's control, the danger of prejudice to the nonmovant, the interests of efficient judicial administration, and whether the movant acted in good faith. *Casio Computer Co. v. Noren*, 35 Fed. Appx. 247, 251 (7th Cir. 2002)(quoting *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 389 (1993)); *Garcia v. H & Z Foods, Inc.*, Case No. 14 C 5101, 2015 U.S. Dist. LEXIS 76298, *4 (N.D. Ill. June 10, 2015).

There is nothing to suggest that Defendants have acted willfully or in bad faith regarding the entry of the Default Judgment as Defendants did not even know that this matter had been filed until October 17, 2018. (Walker Decl., ¶ 12). An agent's failure to notify its principal/party of litigation constitutes excusable neglect where the party did not itself "willfully

9

ignore pending litigation." *Coyote Logistics,* 2017 U.S. Dist. LEXIS 70495, at \*\*4-5. In *Coyote Logistics*, the court held that good cause existed where the registered agent for the moving party failed to forward the summons and complaint to the movant. *Id.* In vacating the default judgment, the court found that there was no evidence that the movant intentionally failed to respond to the complaint. *Id.* The court found that the default judgment was due to inadvertence of movant's agent rather than willful ignorance and that the movant's prompt behavior once it learned of the judgment weighed against a finding of willfulness. *Id.*

Likewise, in *Cracco*, the court found good cause and vacated a default order where the employees receiving a summons and complaint did not understand the significance of the documents. *Cracco*, 559 F.3d at 629-31. The court found that even if the movant should have taken measures to ensure that the complaint/summons were sent to the appropriate employee, the lack of such measures did not establish that the party willfully ignored the litigation. *Id.*

The *Garcia* case is a good illustration of the type of flexibility and balancing of equities in play in determining whether to vacate a default judgment. Specifically, in *Garcia*, the movant's wife accepted service of a summons and complaint at their residence while he was separated from her and living elsewhere. 2015 U.S. Dist. LEXIS 76298, at \*1. In fact, the movant "walk[ed] away from [his] residence for almost six months and [made] no effort to have mail forwarded to a different address or [to] determine whether important correspondence had been delivered." 2015 U.S. Dist. LEXIS 76298, at \*5. Worse yet, after he returned to the premises, the movant actually received a copy of the motion for default judgment before the hearing on the motion, and still failed to appear at the hearing. 2015 U.S. Dist. LEXIS 76298, at \*6. While the court found the movant's decision to go off the grid was certainly "ill-advised" and that he should have appeared at the hearing, it nevertheless found good cause to vacate the

default judgment. *Id.*

Here, as in *Coyote Logistics* and *Cracco*, Beck's failure to tender the Complaint to Walker based on her own inadvertence or lack of understanding does not in any way evidence that Defendants willfully ignored this matter. *Cracco*, 559 F.3d at 629-31; *Coyote Logistics*, 2017 U.S. Dist. LEXIS 70495, at \*\*4-5. Similarly, Defendants' apparent failure to have an ironclad procedure in place for processing legal notices and the service of summons does not evidence anything more than excusable neglect. *Cracco*, 559 F.3d at 629-31; *Coyote Logistics*, 2017 U.S. Dist. LEXIS 70495, at \*\*4-5. There is simply nothing in the record to suggest—especially taking into account their prompt behavior since learning of the case—evidencing that Defendants have acted improperly.

Moreover, as *Garcia* illustrates, the court should also look at the equities to determine whether good cause exists. In *Garcia*, the court found the movant's blissfully ignorant actions questionable, but nevertheless found that good cause existed because it could not discern any prejudice to the nonmovant in proceeding with the case as the nonmovant would simply have to litigate the case and the case was in the early stages so any delay was modest. 2015 U.S. Dist. LEXIS 76298, at \*\*6-7.

While Defendants' conduct in no way comes even close to the "ill-advised" actions of the movant in *Garcia*, the lessons from the case are still instructive to this Motion. Here, the case is also in the early stages and there will be no prejudice to Akbar if he has to litigate this case, which he would have had to do anyway if there had not been a default.

Furthermore, any finding of willfulness would be unwarranted given the circumstances of Defendants' entry into this case by filing this Motion. The court will note that neither of the Defendants were even named in the Complaint. Because Savoy Squares and Savoy Square

11

Apartments are not entities or assumed named, there is not an entity for Akbar to even enforce the Default Judgment against. Indeed, Defendants are voluntarily (at their own risk) interjecting themselves into this litigation to defend the claims and to identify themselves as the potentially proper parties to this litigation. Certainly Defendants' actions in doing so also show that Defendants have not acted in bad faith or in any way willfully ignored the litigation. *See Coyote Logistics,* 2017 U.S. Dist. LEXIS 70495, at \*\*4-5. Quite the opposite: once they learned of the litigation, Defendants have directly—and voluntarily—involved themselves in this litigation.

In light of the totality of the foregoing, Defendants have established good cause for the Default Judgment.

**(2)** **<u>Defendants Have Taken Quick Action to Correct their Excusable Neglect</u>**

The determination of what constitutes "quick action" varies from case to case and relies on the specific circumstances of the case. *Trade Well Int'l v. United Cent. Bank*, 825 F.3d 854, 861 (7th Cir. 2016).

On October 17, 2018, Defendants received notification that the Default Judgment had been entered on October 10, 2018. Defendants immediate sought counsel and retained the undersigned counsel on October 19, 2018. Defendants' counsel then filed this Motion a week after it was retained. The filing of this Motion a week after retaining counsel (and only nine days after discovering this litigation) unquestionably evidences quick action. *See Coyote Logistics*, 2017 U.S. Dist. LEXIS 70495, at \*7 (holding that movant acted quickly where it took six weeks to retain an attorney and a week after the attorney was retained for the motion to be filed).

Defendants have clearly taken the requisite quick action to remedy the Default Judgment.

**(3)** **<u>Defendants Have Meritorious Defenses to the Complaint</u>**

A meritorious defense is not necessarily one which must, beyond a reasonable doubt,

succeed in defeating a default judgment, but rather one which at least raises a serious question regarding the propriety of a default judgment and which is supported by a developed legal and factual basis. *See, e.g., Wehrs v. Wells*, 688 F.3d 886, 890 (7th Cir. 2012). This basis requires a party to provide more than "bare legal conclusions" but "less than a definitive showing that the defense will prevail." *See, e.g., Parker v. Scheck Mech. Corp.*, 772 F.3d 502, 505 (7th Cir. 2014).

A plaintiff may establish an FHA violation by direct or indirect evidence demonstrating that a defendant intentionally discriminated against them in violation of the FHA. *East-Miller v. Lake Cty. Hwy. Dept.*, 421 F.3d 558, 562-63 (7th Cir. 2005). The Complaint does not detail any direct evidence of discrimination. As a result, Akbar would have to show alleged intentional discrimination through the indirect method. *Id.* Akbar cannot even establish a *prima facie* case of discrimination because he cannot show that he qualified for the apartment he applied for or that other potential residents were treated any differently (Defendants identifies more than 20 residents that used disability benefits as "income" in its Statement of Position to the CCHR Complaint). *Id.*

However, even assuming that he could establish a *prima facie* case, Akbar would still need to show that his rejection was in some way pretextual. *Id.* Akbar's Fair Housing Act claim fails for substantially the same reason that his CCHR claim failed.[3] The court entered the Default Judgment premised on its finding that Savoy Square Apartments violated the Fair Housing Act, 42 U.S.C. § 3604 by refusing to accept disability benefits income as qualifying income for rental payments. However, as noted in the dismissal of the CCHR Complaint, there

---

[3] Defendants also note that the CCHR Complaint is still pending review. If the dismissal of the CCHR Complaint is upheld, then (as this court has previously noted) administrative issue preclusion could potentially also doom Akbar's claims. *Novak v. State Parkway Condo. Assoc.*, 141 F. Supp. 3d 901, 907-08 (N.D. Ill. 2015)(Honorable Judge Edmond E. Chang, presiding).

is absolutely no evidence (other than Akbar's speculation) that Interstate failed to accept disability benefits as qualifying income. Rather, even after Interstate accepted the disability benefits as income, Akbar could not satisfy the Minimum Income Requirement governing the Low Income Housing Tax Credit Program. *See* ACOP.

As previously detailed, Akbar was not eligible for the apartment he applied for unless he could show that either: (1) he had $25,776-$31,920 in yearly income (three times the annual rent); or (2) he received public housing assistance or vouchers to supplement his income. *Id.*

As set forth in the Application, Akbar indicated that his monthly income was $731.00 ($8,772/year), which he received from disability payments. Akbar did not indicate that he received any public housing rental assistance such as through the Chicago Housing Authority (CHA) Housing Choice Voucher program. Consequently, Akbar's application was rejected on March 23, 2016 because he could not meet the Minimum Income Requirement of the ACOP.

Far from a product of pretext, Akbar's rejection actually illustrates the legitimacy and effectiveness of the Minimum Income Requirement of the ACOP as the requisite screening kept Akbar from attempting to rent an apartment for $731/month when his income was only $716/month. Certainly there is no way that Akbar could have paid rent and then his other expenses on $15/month. The simple application of the well-founded Minimum Income Requirement to Akbar's Application in no way demonstrates that his rejection was pretextual. Instead, as the dismissal of the CCHR Complaint demonstrates, the Minimum Income Requirement is a good, legitimate business practice. As a result, Defendants have established a meritorious (and dispositive) defense to Akbar's FHA claim.

**CONCLUSION**

For the foregoing reasons, Defendants request that the court vacate the Default Judgment pursuant to Federal Rule 60(b)(1).

WHEREFORE, Defendants Interstate Realty Management Company, a New Jersey corporation, incorrectly named herein as Savoy Squares, and Legends A-2, LLC, an Illinois limited liability company, incorrectly named herein as Savoy respectfully requests that this Honorable Court vacate the Default Judgment entered on October 10, 2018, and any other such further relief as this Honorable Court deems just and appropriate.

Respectfully Submitted,

INTERSTATE REALTY MANAGEMENT
COMPANY, LEGENDS A-2, LLC

October 26, 2018   By:   /s/ Chris S. Wunder
Chris S. Wunder (cwunder@kpglaw.com)
Eric D. Kaplan (ekaplan@kpglaw.com)
Kaplan Papadakis & Gournis, P.C.
180 North LaSalle Street, Suite 2108
Chicago, Illinois 60601
(312) 726-0531
Fax: (312) 726-4928
**ATTORNEY FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

The undersigned, one of the attorneys for Defendants, hereby certifies that he served the foregoing pleading(s) on all parties/counsel of record by causing a true copy thereof to be served by federal express and first class U.S. Mail, postage prepaid, on Jamal A. Akbar, 6151 S. Michigan Ave., Apartment 307, Chicago, Illinois 60637 and transmitted by electronic mail through the CM/ECF Filing System for delivery on or before 5:00 p.m. on October 26, 2018.

October 26, 2018     By:    /s/ Chris S. Wunder
Chris S. Wunder (cwunder@kpglaw.com)
Eric D. Kaplan (ekaplan@kpglaw.com)
Kaplan Papadakis & Gournis, P.C.
180 North LaSalle Street, Suite 2108
Chicago, Illinois 60601
(312) 726-0531
Fax: (312) 726-4928
**ATTORNEY FOR DEFENDANTS**