UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMAL A. AKBAR, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:17-CV-05447 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| INTERSTATE REALTY MANAGEMENT, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Jamal Akbar brings this *pro se* lawsuit against Interstate Realty Management and related entities (for convenience's sake, the Defendants will be referred to as Interstate).[1] Akbar alleges that Interstate violated his civil rights[2] by denying his rental application based on his disability. R. 69, Sec. Am. Compl. The parties have now filed cross-motions for summary judgment on the Second Amended Complaint. R. 143, Defs.' Mot. Summ. J.; R. 148, Pl.'s Br. For the reasons discussed below, Interstate's motion is granted, and Akbar's motion is denied.

## I. Background

In deciding cross-motions for summary judgment, the Court views the facts in the light most favorable to the respective non-moving party. *See Matsushita Elec.*

---

[1]The Court has subject matter jurisdiction over this case under 28 U.S.C § 1331. Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

[2]As explained later in this Opinion, the Court reads Akbar's complaint expansively to also include violations of the Fair Housing Act of 1968, 42 U.S.C. § 3601 *et seq.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). So when the Court evaluates Interstate's summary judgment motion, Akbar gets the benefit of reasonable inferences; conversely, when evaluating Akbar's motion, the Court gives Interstate the benefit of the doubt.

### A. Local Rule 56.1

Before digging into the substance of Interstate's summary judgment motion, the Court addresses the deficiencies in Akbar's responsive briefing and Rule 56.1 Statement of Facts. Northern District of Illinois Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file a memorandum of law in support of the non-movant's position and to respond to the moving party's Statement of Facts. LR 56.1(b)(2)–(3). The response must refer, in the case of any disagreement, to specific parts of the record. LR 56.1(b)(3)(B). The non-movant may also provide a statement of any additional facts that require the denial of summary judgment, again with supporting references to the record. LR 56.1(b)(3)(C). Akbar did not file a response or statement of facts. Instead, Akbar filed two short documents consisting of numbered factual and legal assertions unsupported by any citation to the record. *See* R. 148, 149. These documents fall far short of meeting the requirements of Local Rule 56.1, and indeed of Federal Rule of Civil Procedure Rule 56.

Federal courts may enforce their local rules, such as Local Rule 56.1, even as to *pro se* litigants like Akbar. *See e.g., Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *Greer v. Board of Educ. of City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001). To be sure, the Court still views Akbar's *pro se* filings as expansively as reasonably

possible, and he still gets the benefit of viewing the evidence in the light favorable to him. But Akbar has not come close to meeting the requirements of Rule 56.1, even though Interstate provided the required notice of Rule 56.1's requirements, *see* R. 146, and after the Court directed him to carefully read Rule 56.1 and to contact the Pro Se Help Desk for additional guidance on preparing Rule 56.1 Statements. *See* R. 141. The Court accordingly deems the facts outlined in Interstate's Statement of Facts admitted, and disregards Akbar's unsupported factual assertions. *See* LR. 56.1(b)(3)(C).

## B. Undisputed Facts

In February 2016, Akbar applied to live at the Legends South Apartment Complex, a mixed-income, tax-credit property located at 4448 S. State St., Chicago, Illinois 60609. R. 145, DSOF ¶¶ 2, 8, 12; R. 145-2, Defs.' Exh. A at 42; R. 145-2, Akbar Dep. 39:4–5. The Complex (also referred to as Savoy Square) is managed by Interstate, which evaluates rental applications for low-income units under the federal Low Income Housing Tax Credit (LIHTC) Program. DSOF ¶¶ 2, 8. On his application, Akbar disclosed that he received $731 per month in disability-benefits income, listing no other source of income. DSOF ¶ 13; Defs.' Exh. A at 44; Akbar Dep. 37:1–9. The monthly rent for a one-bedroom LIHTC apartment at Savoy Square was $746.00/month. DSOF ¶ 15; R. 145-5, Defs.' Exh. C, Cooper Decl. ¶ 13.

Savoy Square is *not* a project-based Section 8 property or a project-based voucher property, which means prospective tenants must already be a voucher/Section 8 recipient before they apply. DSOF ¶ 50; Cooper Decl. ¶ 31. Its Admissions and

Continued Occupancy Policy (ACOP) states: "Generally, except for persons who are using a housing choice voucher to rent the [LIHTC] unit or Public Housing Applications, the applicant must earn at least 3 times the rental amount." DSOF ¶ 16; Defs.' Exh. A at 57; Akbar Decl. 35:18–36:24; Cooper Decl. ¶ 7. The Complex has accepted, for example, an applicant who is disabled that failed to meet the Minimum Income Requirement but received Section 8 rental assistance. DSOF. ¶ 45; Cooper Decl. ¶ 26. There have also been several residents with disabilities who reside or have resided at the Complex. DSOF ¶ 44; Cooper Decl. ¶ 25.

Akbar did not apply with a public housing Section 8 voucher or otherwise indicate he received public assistance on his application. DSOF¶¶ 18–19; Defs.' Exh. A at 42–48; Akbar Dep. 46:2–7. Akbar's minimum income ($8,772) was far below the minimum yearly gross income for a one-bedroom LIHTC unit ($26,856). DSOF ¶¶ 40–41; Cooper Decl. ¶¶ 14–15. His application for residency was rejected in March 2016 because he "[did] not meet the minimum income requirements. DSOF ¶¶ 20–22; Defs.' Exh. A at 50; Akbar Dep. 30:14–16; Cooper Decl. ¶ 18.

In May 2016, Akbar filed a formal complaint with City of Chicago Commission on Human Relations (CCCHR) alleging Interstate violated the Fair Housing Act by discriminating against him based on his disability and income. DSOF ¶¶ 28–29; Defs.' Exh. A at 94. CCCHR dismissed Akbar's complaint in March 2018. DSOF ¶ 30; Defs.' Exh. A at 95. The Commission found Akbar was not qualified to rent a low-income apartment because he did not meet the Minimum Income Requirement and did not qualify under the housing choice voucher or public housing assistance

4

exceptions. DSOF ¶ 31; Defs.' Exh. A at 99. Akbar then sought to appeal the CCCHR's decision. DSOF ¶ 32; Defs.' Exh. A at 114. The appeal was denied in November 2019. DSOF ¶ 32; Defs.' Exh. A at 110.

In December 2019, Akbar requested an Illinois state court review the dismissal of his CCCHR complaint. DSOF ¶ 33; Defs.' Exh. A at 114. The Court dismissed the appeal in July 2020, *id.* ¶ 34; R. 145-6, Defs.' Exh. E, and dismissed Akbar's motion to reconsider the dismissal in January 2021. DSOF ¶ 35; R. 145-8, Defs.' Exh. G.

Akbar now brings this lawsuit, claiming that Interstate discriminated against him based on his disability, failed to apply the CHA's Minimum Tenant Selection Plan for Mixed-Income/Mixed-Finance Communities to his application, and denied him due process of law by not giving him the opportunity to question the basis for the denial. *See generally* Sec. Am. Compl. at 1–3.

## II. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011),

and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

### A. Res Judicata

As a threshold issue, Interstate argues res judicata bars Akbar's federal claims. Defs.' Br. at 3–7. Specifically, in January 2021, the Chancery Division of the Circuit Court of Cook County denied with prejudice Akbar's motion to reconsider the dismissal of his complaint requesting the court review his CCCHR complaint. DSOF ¶¶ 33, 35; *see* Defs.' Exh. G. Defendants allege the January 2021 decision is a final judgment rendered by a court of competent jurisdiction of the same claim between the same parties. Defs.' Br. at 4–5. They assert that, because Akbar had a "full and fair opportunity" to litigate his Fair Housing Act claim in front of the state court and chose not to do so, the January 2021 decision precludes any Fair Housing Act claims in this case. *Id.* at 6–7.

State judicial proceedings are entitled to "full faith and credit" in federal courts. 28 U.S.C. § 1738. This Full Faith and Credit Clause applies to state court

6

Case: 1:17-cv-05447 Document #: 166 Filed: 03/29/22 Page 7 of 14 PageID #:1241

judgments entered in proceedings to review a state administrative agency. *White v. Illinois State Police*, 15 F.4th 801, 809 (7th Cir. 2021) (cleaned up).[3] Whether a state court judgment precludes an eventual federal lawsuit is a question of state law. *Id.* Under Illinois law, res judicata applies if there is "(1) a final judgment on the merits rendered by a court of competent jurisdiction, (2) the same cause of action, and (3) the same parties or their privies." *Hudson v. City of Chicago*, 889 N.E.2d 210, 213 (Ill. 2008).

Importantly, however, res judicata can only apply "when an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate[.]" *Hamdan v. Gonzales*, 425 F.3d 1051, 1059 (7th Cir. 2005) (quoting *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991) (if conditions are met, courts may "apply res judicata to enforce repose"). The following safeguards determine whether an agency acts in a judicial capacity: "(1) representation by counsel, (2) pretrial discovery, (3) the opportunity to present memoranda of law, (4) examinations and cross-examinations at the hearing, (5) the opportunity to introduce exhibits, (6) the chance to object to evidence at the hearing, and (7) final findings of fact and conclusions of law." *Reed v. AMAX Coal Co.*, 971 F.2d 1295, 1300 (7th Cir. 1992) (cleaned up).

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

As this Court previously stated, the Seventh Circuit has not yet resolved whether claim or issue preclusion may be invoked based on state administrative proceedings in the context of Fair Housing Act claims. *See Novak v. State Parkway Condo. Ass'n*, 141 F. Supp. 3d 901, 908 (N.D. Ill. 2015).[4] The cases cited by Interstate to the contrary are distinguishable. *See* Defs.' Br. at 4, 7.

To begin, the Seventh Circuit held the plaintiff in *Garcia v. Village of Mount Prospect* had full and fair opportunity to litigate in state court his claims that the police pension board's denial of his disability benefits constituted retaliation and employment discrimination under Title VII and 7 U.S.C. § 1981. 360 F.3d 630, 644 (7th Cir. 2004). Interstate attempts to analogize *Garcia* to this case, arguing Akbar could have pursued his Fair Housing Act and civil rights claims in state court. Defs.' Br. at 6. Defendants fail, however, to provide any analysis or citation that Akbar could have brought these claims specifically under the CCCHR's administrative review process. As its March 2018 Order makes clear, the Commission "determined that there is no substantial evidence of the *ordinance* violations alleged in this matter." Defs.' Exh. A at 95 (emphasis added). The Commission did not review any claims under the Fair Housing Act or constitutional violations.

Likewise, in *Torres v. Rebarchak*, the Court held the plaintiff's equitable claims under the Fair Housing Act were barred by the res judicata effect of an Illinois state

---

[4]To the extent the Seventh Circuit has addressed this question after *Novak*, it did so in a nonprecedential decision that omitted any mention of a state administrative remedy. *See e.g., Chellappa v. Summerdale Ct. Condo. Ass'n*, 729 F. App'x 451 (7th Cir. 2018).

court consent judgment. 814 F.2d 1219, 1223 (7th Cir. 1987). Unlike here, the *Torres* plaintiff sued defendants *directly* in the Chancery Division of the Circuit Court of Cook County and did not first seek an administrative proceeding. *Id.* at 1220.

Interstate's citation of *Gao v. Snyder Companies* is somewhat closer, but still not on point. 2010 WL 3037526, at \*4 (C.D. Ill. July 13, 2010). First, Interstate's direct quotation of the *Gao* decision on preclusion is dictum and has little weight. *See* Defs.' Br. at 7. There, the Court recognized that issue preclusion may apply to fair-housing claims if the agency acted in a judicial capacity and a meaningful opportunity to liti-gate was provided. *Gao,* 2010 WL 3037526, at \*4. The Court in *Gao* nonetheless de-clined to decide the issue because the defendant provided an insufficient factual rec-ord about the safeguards given to the plaintiff. *Id.* As discussed in detail below, the same concerns about proper safeguards appear in this case.

Notably, Interstate fails to adequately explain CCCHR's process in evaluating Akbar's complaint. It is unclear whether the Commission acted in a judicial capacity and properly resolved disputed factual issues when issuing its decisions. A close ex-amination of the record reveals how a complainant might request a review of the Commission's initial dismissal and the procedures to access investigative records be-fore requesting the Commission review a previous decision. *See* Defs.' Exh. A at 96. But there is insufficient factual evidence to determine whether Akbar was provided procedural safeguards in his administrative hearing or whether such a hearing was even provided. *See e.g., Colon v. McLaughlin,* 2018 WL 4898880, at \*4 (N.D. Ill. Oct.

9, 2018) (denying defendant's res judicata claim at the motion to dismiss stage); *Brown v. City of Chicago*, 2016 WL 109888, at *3 (N.D. Ill. Jan. 11, 2016) (same).

The record is unclear as to whether Akbar was represented by counsel, obtained discovery, had an opportunity to examine witnesses at hearings (if they indeed happened), or was able to object to any evidence prior to the Commission's decisions. *See generally* Defs.' Exh. A at 98–102, 110–13. For example, the Commission's Investigation Summary (which formed the basis for its denial of Akbar's original complaint) describes several relevant documents, including Akbar's application, Interstate's rejection letter, information concerning various apartments at Savoy Square, etc. *See* Defs.' Exh. A at 100–01. The Commission does not, however, discuss whether Akbar was permitted to dispute these documents' validity or testify to their contents. *Id.* To be sure, the Commission's decision denying review of the complaint stated Akbar's request "offers little in the way of facts or legal precedent that the Commission failed to consider" in its original dismissal. *Id.* at 112. But, again, it is unclear whether Akbar was permitted to request discovery or call witnesses to contest any of Interstate's evidence. As a result, several unresolved questions prevent this Court from granting summary judgment for Defendants on res judicata grounds.

### B. Merits

Moving to the substance of Interstate's motion, the merits are more easily resolved.

### 1. Section 1983

Akbar brings constitutional-rights claims against Interstate under 42 U.S.C. § 1983. Sec. Am. Compl. ¶ 1. Section 1983 serves as a procedural vehicle for lawsuits "vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). To pass summary judgment under § 1983, the Court must determine "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Colbert v. City of Chicago*, 851 F.3d 649, 656 (7th Cir. 2017) (cleaned up). Akbar provides no evidence that Interstate acted under color of state law. Although Interstate is contracted with the Chicago Housing Authority, a municipal not-for-profit organization, this does not mean the private corporation was acting under color of state law. The Seventh Circuit has held § 1983 may be applied to a private corporation when it has contracted to provide essential government services, such as health care for prisoners. *See Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014); *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir.1982). Akbar has not presented any analysis or citation as to how Interstate's relationship with the Chicago Housing Authority (or the U.S. Department of Housing and Urban Development for that matter) meets this standard. Neither has the Court identified any evidence that Interstate, in evaluating applicants for low-income housing, was delegated a public function and under control of the state. *See Camm v. Faith*, 937 F.3d 1096, 1105 (7th Cir. 2019) (holding private forensic investigators acted under color of law because prosecutor "delegated a public

11

function when he hired them to investigate the crime scene on behalf of Indiana law enforcement" and state officials controlled the investigators' actions throughout the relevant time period). Consequently, even if Akbar could bring a Fair Housing Act claim or other constitutional claim under § 1983,[5] he could not bring them under private defendants. Therefore, summary judgment is granted for Interstate.[6]

## 2. Fair Housing Act

To the extent that Akbar alleges a Fair Housing Act claim against Interstate, he does so based on his disability status.[7] Sec. Am. Compl. at 3; Pl.'s Br. ¶¶ 4–5.

The Fair Housing Act authorizes any "aggrieved person" to bring a fair-housing suit, 42 U.S.C. § 3613(a), that is, any person who "claims to have been injured by a discriminatory housing practice," or is about to be injured. *Id.* § 3602(i). There are two pertinent forms of discrimination barred by the Fair Housing Act (1) disparate treatment; and (2) disparate impact. *Cty. of Joliet v. Mid-City Nat'l Bank of Chi.*, 2014 WL 4667254, at \*22 (N.D. Ill. Sept. 17, 2014), *aff'd sub nom. Cty. of Joliet, Ill. v. New W., L.P.,* 825 F.3d 827 (7th Cir. 2016). In the Second Amended Complaint, Akbar did

---

[5]Interstate alleges in its briefing that Akbar cannot bring a § 1983 claim based on his Fair Housing Act claim because the Fair Housing Act "provides its own remedial scheme." Defs.' Br. at 3. Because the issue is resolved on other grounds, the Court does not need to decide this question.

[6]Even though Akbar moved for summary judgment, he has not sufficiently moved for Rule 56.1 facts or responded to Interstate's facts and legal arguments. This means his motion for summary judgment is denied for the same reasons as Interstate's motion is granted.

[7]Plaintiff's briefing includes numerous citations that do not apply to his claims. For example, he asserts Interstate's rejection of his rental application was "arbitrary and capricious," a standard that do not apply to Defendants. *See* Pl.'s Br. ¶ 3. The Court restricts its analysis to only Akbar's relevant claims.

not spell out specifically what type of discrimination claim he was bringing, so the Court will address both forms of discrimination.

To state a disparate treatment claim under the Fair Housing Act ("disparate treatment" is just another way of saying intentional discrimination), Akbar must plausibly allege that Interstate had a discriminatory intent or motive. *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). Evidence of intentional discrimination may be alleged through "either direct or circumstantial evidence." *E.-Miller v. Lake Cty. Highway Dep't*, 421 F.3d 558, 563 (7th Cir. 2005) (cleaned up). "Proof of discriminatory motive ... can in some situations be inferred from the mere fact of differences in treatment." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n. 15 (1977).

In this case, Akbar does not present enough facts to plausibly suggest that Interstate has intentionally discriminated against people with disabilities in its housing practices. As Interstate accurately identifies, Akbar is unable to dispute that he was not a public housing recipient and could not meet the minimum income for either LIHTC or (the more expensive) non-LIHTC units. DSOF ¶¶ 38, 42; Defs.' Br. at 11. Accordingly, Akbar was rejected based on his income, not his disability. *See* Defs.' Exh. A at 50. As further proof, Interstate provides evidence that it has generally accepted applicants with disabilities, DSOF ¶ 44, and accepted applicants with disabilities that do not meet the minimum income but received Section 8 rental assistance. *Id.* ¶ 45.

This leaves the disparate impact claim, which requires Akbar to allege facts that raise a plausible inference that Interstate's rental policy "caused or predictably

13

will cause a discriminatory effect" against a protected class. 24 CFR § 100.500(c)(1); *see Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 527 (2015). Accordingly, "[d]isparate-impact analysis looks at the effects of policies, not one-off decisions." *City of Joliet, Ill. v. New W., L.P.*, 825 F.3d 827, 830 (7th Cir. 2016) (finding no disparate impact because "condemnation of Evergreen Terrace is a specific decision, not part of a policy to close minority housing in Joliet"). Similarly, Akbar presents no evidence that Interstate's Admissions and Continued Occupancy Policy caused or predictably caused discrimination against applicants with disabilities. The same evidence which defeats Akbar's disparate treatment claim also defeats his disparate impact claim. Given that Akbar does not contest any of these factual or legal arguments, Interstate's summary judgment motion on the Fair Housing Act claim is granted.

## IV. Conclusion

For the reasons above, Interstate's motion for summary judgment is granted and Akbar's motion for summary judgment is denied.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 29, 2022